IN DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| CHE PEAK, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND DEMAND FOR** |
| | ) | **JURY TRIAL** |
| ADVANCE STORES COMPANY, | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, CHE PEAK, by and through his attorneys, and for his cause of action against the Defendant hereby states the following:

### PARTIES-VENUE-JURISDICTION

1.      Plaintiff Che Peak (hereinafter referred to as "Peak") is an African-American male citizen of the United States of America, and at all relevant times alleged herein, was a resident of Omaha, Douglas County, Nebraska.

2.      Defendant Advance Stores Company, Incorporated (hereinafter referred to as "Advance") is a foreign Corporation that is authorized to conduct business in Nebraska and at all times relevant, was doing business under the name of Advance Auto Parts in Omaha, Douglas County, Nebraska.

3.      This Court has original jurisdiction over the claims arising under state law and concurrent jurisdiction over the federal law claims.

4.      Venue is appropriate in this District under Neb. Rev. Stat. §25-403.02. The acts about which Plaintiff complains occurred during the course of his employment in Douglas County, Nebraska.

1

**EXHIBIT
A**

5.     On or about January 10, 2016, Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on Plaintiff's charge, number 32E-2015-00365. A true and correct copy of said Notice of Right to Sue attached as Exhibit "A" and incorporated herein by reference.

## FACTUAL BACKGROUND

6.     Peak commenced employment for Advance beginning in June 2009, and was more recently working as a Retail Parts Pro as of May 2013.

7.     In February 2013, Peak was working as a Commercial Parts Pro at Advance's store located at approximately 179th and Maple Street. Peak made verbal and written complaints to his district manager that his store manager, Bob Ferguson, was treating him differently than the Caucasian employees. Specifically, Peak complained that he was being paid less than other Caucasian employees in the same position and that Ferguson disciplined him for things that other Caucasian employee were not disciplined for. Peak's district manager told him that he would discuss it with the HR Department. As a result, Peak was given an increase in his pay, but no other action was taken by Advance.

8.     Shortly after making his complaints of discrimination, Peak was transferred to another store on 144th and Center. Peak retained the position of Commercial Parts Pro and earned the same hourly wage. Peak was told that he was being moved because Advance was reorganizing its commercial division and he had to move to the new store to keep his job.

9.     In May 2013, Peak was told by Mike Brown that he was going to be moved to Advance's store on 48th and L Street. At this time, Brown demoted Peak to the position of Retail Parts Pro and also decreased his hourly wage. Peak asked Brown why he was bring moved again, and Brown said that they had a lot of problems with things like theft at the L Street store

2

and that Advance needed Peak's skills there. Peak asked why his pay was being decreased, and Brown told him that the L Street store couldn't afford to pay him the same in the new position and that once he got into the position, he could prove himself and ask the new district manager for a raise.

10.     Shortly after Peak began working at Advance's store on L Street, he found out that the Commercial Part Pro position that he was taken out of was moved back to his former store on 179th and Maple Street.

11.     From May 2013 until the time he was terminated, Peak began making complaints, verbally and in writing, to Advance's management about the discrimination he was being subjected to by his new manager, John Giessel, and co-worker Jim McDonald. Peak complained that Giessel and McDonald treated him and other minority employees less favorably than the Caucasian employees at that store. Specifically, Peak complained that Giessel and McDonald discriminated against him by:

    a.  yelling at Peak and disciplining him for things they didn't yell and discipline Caucasian employees for;

    b.  treating the Caucasian employees more favorably in their schedules and job assignments; and

    c.  paying him less than other similarly-situated Caucasian employees.

12.     While working at the L Street store, Peak also made complaints that Giessel and McDonald treated the Hispanic employees and customers differently compared to Caucasian employees and customers. Peak also complained that he and other employees had witnessed Giessel and McDonald make offensive and unwelcome comments about African-Americans.

13.     Peak dually filed discrimination and retaliation charges against Advance with the

3

U.S. Equal Opportunity Commission and the Nebraska Equal Opportunity Commission on May 20, 2014 (32E-2014-00528; NEB 1-13/14-5-44923-RD) and August 27, 2014 (32E-2014-00785; NEB1-14/15-8-45277) based on age, race, color, sex, and disability by association.

14.     In October 2014, Peak applied for and received FMLA leave to care for his son. Peak's work schedule was affected as he could not open, close, or work on the weekend because he had to be available to care for his son and take him to doctor appointments. The FMLA restrictions were still on his schedule in February 2015.

15.     In December 2014 and January 2015, Peak discovered that Advanced deducted forty (40) hours of earned sick time from his paycheck without payment of said time.  Peak addressed the issue in a call with Advance's HR Department and was told that his manager would have to correct the error. Peak raised the issue several times, verbally and in writing, with his manager Cody Thielen. Thielen refused to correct the error and gave no explanation for the refusal. As a result, Peak was forced to take unpaid time when he should have been compensated for subsequent sick days.

16.     On January 19, 2015, Peak returned to work after being out sick for several days. Peak was feeling ill, but did not want to call in sick again.  During Peak's shift, he felt progressively worse, and told Thielen that he was feeling ill and needed to leave.  Thielen said that was fine.  Peak volunteered to stay until DJ came in for his shift, and Thielen told Peak to let him know when he was getting ready to leave.

17.     After DJ arrived, and Peak assisted him with some customers, he looked for Thielen. DJ told Peak that Thielen left and had called to tell DJ that he was not coming back to the store even though he was on the schedule until 6:00 pm.

18.     Peak asked DJ to have Thielen call him because he still did not feel well, but

Thielen never returned Peak's message. Peak then left at 4:00 p.m. due to illness.

19.     When Peak returned the next day, no one said anything to him about leaving due to illness, including Thielen. Nor was anything said to Peak about it the following week.

20.     On January 20, 2015, Thielen raised his voice at Peak when he asked Thielen for permission to finish a project that he was working on before clocking out for lunch. Thielen asked, "What? You are not going to go to lunch after your boss told you to?" Peak said, "No" and stopped working on the project and proceed towards clocking out for lunch. A customer who came back to purchase a battery stopped Peak before he could clock out, and Thielen just stared at Peak with a menacing look while Peak assisted the customer. After the customer left, Peak asked Thielen why he was looking at him like he was going to do something to him. Thielen responded in a sarcastic tone, "I am sorry you feel that way."

21.     On January 23, 2015, Peak was scheduled to work from 10am to 6pm, but ended up taking additional FMLA leave due to his son having surgery related to his serious health condition.

22.     On February 2, 2015, Peak was working in the store with the two new managers who had recently been assigned to his store, Jess Hanson and Chris Smith.

23.     Thielen was in the store on February 2, 2015 as well, even though he had moved stores the previous week. Peak was told that Thielen wanted to speak to him, and when he went in the back office to do so, Peak saw that there were two police officers with Thielen. Thielen then told Peak he was terminating his employment for leaving early on January 19th. Peak reminded Thielen that he allowed him to go home early because he was ill, and Thielen said there was nothing to discuss and that Peak needed to clock out and go.

24.     As Peak was leaving, he asked Smith if he knew anything about his termination.

Smith said no and that he had been looking forward to working with Peak.

25.     To the best of his knowledge, Peak was not any of his earned vacation time subsequent to his termination.

26.     There were other employees who have left a shift early and they were not disciplined or terminated like Peak.

27.     Plaintiff's performance was satisfactory throughout his employment.

28.     At the time of his termination, Plaintiff was earning approximately $10.84 per hour and working approximately 40 hours per week. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $23,848.00 and are continuing. As part of his compensation, Plaintiff also received health, dental, and vision insurance and 401K retirement contributions in amount that is currently unknown to Plaintiff and will be subject to further discovery.

29.     As a result of Defendant's wrongful conduct, Plaintiff suffered compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## CLAIM I

## RACIALLY-HOSTILE WORK ENVIRONMENT

### (42 U.S.C. § 1981/Title VII)

30.     Plaintiff hereby incorporates paragraphs 1 through 29 as if fully set forth herein and states:

31.     Plaintiff was subject to offensive racial slurs, offensive comments and constant policies and practices encouraging isolation that were sufficiently severe and pervasive as to alter his terms and conditions of employment.

6

32.     The offensive racial slurs and offensive comments were based upon race, color, black or African-American, or non-White status.

33.     The comments were unwelcome.

34.     Defendant was aware of the racial slurs, offensive conduct and policies and practices of isolation because of complaints made by Plaintiff and other employees.

35.     The Defendant failed to take reasonable measures to prevent and promptly remedy the racially hostile environment.

36.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

## CLAIM II

## DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT

### (42 U.S.C. § 1981/Title VII)

37.     Plaintiff hereby incorporates paragraphs 1 through 36 as if fully set forth herein and states:

38.     Defendant discriminated against Plaintiff on the basis of his race and/or color in violation of Title VII and 42 U.S.C. 1981 by subjecting him to disparate treatment in the terms, privileges and conditions of his employment in the following ways:

a.  paying less in wages to Plaintiff than similarly-situated Caucasian employees;

b.  disciplining Plaintiff for conduct that other similarly-situated Caucasian employees were not disciplined for;

7

c.  denying Plaintiff job promotions when he was more qualified than similarly-situated Caucasian employees who were promoted;

d.  demoting Plaintiff when his job performance was better than similarly-situated Caucasian employees who were not demoted;

e.  terminating Plaintiff for conduct that other similarly-situated Caucasian employees were not terminated for; and,

f.  other ways to be proven at trial.

39.  Race and/or color was a motivating factor in Defendant's decisions regarding the terms and conditions of Plaintiff's employment, wages, discipline and termination.

40.  As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

## CLAIM III

## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

### (42 U.S.C. § 1981/Title VII)

41.  Plaintiff hereby incorporates paragraphs 1 through 40 as if fully set forth herein and states:

42.  Plaintiff engaged in the protected activity of lodging internal complaints with the Defendant concerning the discriminatory treatment he was receiving with regard to the terms and conditions of his employment. Plaintiff also engaged in the protected activity of lodging internal complaints with the Defendant regarding the hostile work environment fostered by the Defendant based upon race and color.

8

43.    Plaintiff engaged in the protected activity of filing two separate charges of discrimination with the EEOC and NEOC alleging that he was being discriminated against because of his race, color, gender and age. Plaintiff also alleged that Defendant retaliated against him for making his informal complaints of discrimination.

44.    Based on these complaints, the Defendant retaliated against Plaintiff by failing to address the hostile work environment or otherwise remedying the situation, failing to give him raises, demoting him, assigning him undesirable job duties and eventually terminating his employment.

45.    There was a causal connection between Plaintiff's participation in protected activity and the adverse employment action taken against Plaintiff.

46.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

<u>CLAIM IV</u>

**RETALIATION**

42 U.S.C. §12203

47.    Plaintiff hereby incorporates paragraphs 1 through 46 as if fully set forth herein and states:

48.    During his employment, Plaintiff engaged in protected activity, including but not limited to, making complaints of discrimination on the basis of disability by association and exercising his rights under FMLA requesting a reasonable accommodation related to his disability.

49.     Defendant took adverse employment action against Plaintiff, including but not limited to, terminating Plaintiff's employment.

50.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against him.

51.     Defendant acted willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff and by doing so is subject to punitive damages.

52.     As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## CLAIM V

### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

#### 29 U.S.C. 2601 et seq.

53.     Plaintiff hereby incorporates paragraphs 1 through 52 as if fully set forth herein and states:

54.     Defendant is and was at all times material an "employer" within the meaning of the Family Medical Leave Act.

55.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

56.     Beginning in at least October 2014, Plaintiff's son suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

57.     Plaintiff was entitled to a leave of absence pursuant to his rights under the Family Medical Leave Act.

58.     Plaintiff invoked his right to a leave of absence under the Family Medical Leave Act.

59.     Defendant failed to provide Plaintiff with the protected leave that the Family Medical Leave Act requires and terminated him for missing work while he was on FMLA leave.

60.     Defendant interfered with Plaintiff's right to take leave under the Family Medical Leave Act.

61.     Defendant discriminated against Plaintiff and terminated Plaintiff for exercising his rights under the Family Medical Leave Act.

62.     As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages and other emoluments of employment.

## COUNT VI

### VIOLATION OF NEBRASKA WAGE PAYMENT AND COLLECTION ACT

### Neb. Rev. Stat. § 48-1229 et seq.

63.     Plaintiff hereby incorporates by reference paragraph 1 through 62 and states:

64.     Defendant meets the definition of employer set forth in Neb. Rev. Stat. § 48-1229(1), and as an employer, Defendant is subject to, and is required to abide by, the provisions of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228, et seq. (hereafter "NWPCA").

65.     Plaintiff meets the definition of employee set forth in Neb. Rev. Stat. § 48-1229(2), and as an employee, Plaintiff is entitled to the benefits and protection of the NWPCA.

66.     Plaintiff performed labor and services for Defendant and earned wages in the form of sick, vacation and/or paid time off.

11

67.    Defendant willfully failed to pay Plaintiff his earned wages in violation of the NWPCA and it has been more than thirty (30) days since the regular payday designated by Defendant.

68.    In addition to the wages owed, Plaintiff is entitled to the costs of this suit, plus attorney's fees in an amount not less than 25% of his unpaid wages, pursuant to Neb. Rev. Stat. § 48-1231.

69.    Pursuant to Neb. Rev. Stat. § 48-1232(1), an equal amount of the judgment rendered herein should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State. Because Defendant's nonpayment of wages to Plaintiff was willful, an amount equal to two times the amount of unpaid wages should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State, pursuant to Neb. Rev. Stat. § 48-1232(2).

## DAMAGES

70.    Plaintiff hereby incorporates by reference paragraphs 1 through 69 and states:

71.    As a result of Defendant's wrongful conduct, Plaintiff has suffered damages and seeks the following relief:

    a.  Unpaid wages under the Nebraska Wage Payment and Collection Act;

    b.  Back pay and lost benefits to the time of trial;

    c.  Front pay including retirement and other benefits;

    d.  Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

e.  Punitive damages for defendants' actual malice or reckless indifference to Plaintiff's federally protected rights;

f.  Liquidated damages for FMLA violation as prescribed by 29 U.S.C §2617;

g.  Liquidated damages paid to the common school fund under Neb. Rev. Stat. §48-1232

h.  Attorney's fees, expert witness fees and other reasonable costs; and,

i.  Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff Che Peak demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for all his general, special, liquidated and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury, in Douglas County, Nebraska.

Dated this 6th day of April, 2016.

CHE PEAK, Plaintiff

BY:

Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
10730 Pacific Street, #111
Omaha, Nebraska 68114
(402) 393-7529
(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorneys for Plaintiff

13

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Che K. Peak<br>5523 N 34th St<br>Omaha, NE 68111 | From: St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2015-00365 | Joseph J. Wilson,<br>State & Local Program Manager | (314) 539-7816 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_James R. Neely, Jr.,_
Director

January 7, 2016
(Date Mailed)

Enclosures(s)

cc:
ADVANCE STORES COMPANY, INC DBA ADVANCE
AUTO PARTS
c/o Kenneth M. Wentz
JACKSON LEWIS
10050 Regency Cir, Suite 400
Omaha, NE 68114

EXHIBIT
A

Enclosure with EEOC
Form 161 (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date** this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02** -- *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** --   **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** --   **All Statutes:**

You may contact the EEOC representative shown on your Notice, if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. **If you need help in finding a lawyer, you may call (314) 539-7911 in St. Louis, (913) 551-6609 in Kansas City, or (405) 231-5349 in Oklahoma City.** If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI160002875
Transaction ID: 0003659836
Filing Date: 04/21/2016 10:27:33 AM CDT

IN DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

CHE PEAK,                                    )          Case No. CI16-2875
                                             )
                Plaintiff,                   )
                                             )
vs.                                          )          **PRAECIPE**
                                             )
ADVANCE STORES COMPANY,                      )
INCORPORATED,                                )
                                             )
                Defendant.                   )

TO THE CLERK OF SAID COURT:

     Please issue summons for service, along with the Complaint, upon Defendant Advance Stores Company, Incorporated's registered agent via certified mail, return receipt requested:

     National Registered Agents, Inc., Registered Agent for
     Advance Stores Company, Incorporated
     5601 South 59th Street
     Lincoln, NE 68516

     DATED this 21st day of April, 2016.

                         CHE PEAK, Plaintiff

               BY:   /s/ Jennifer Turco Meyer
                     Jennifer Turco Meyer, #23760
                     Of Dyer Law, P.C., LLO
                     10730 Pacific Street, #111
                     Omaha, Nebraska 68114
                     (402) 393-7529
                     (402) 391-2289 facsimile
                     Jennifer@dyerlaw.com
                     Attorneys for Plaintiff

Image ID:                    **SUMMONS**                    Doc. No.   381813
D00381813D01

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha              NE 68183

Che Peak v. Advance Stores Company

Case ID: CI 16    2875

TO:  Advance Stores Company
DBA: Advance Auto Parts

You have been sued by the following plaintiff(s):

Che Peak

Plaintiff's Attorney:   Jennifer L Meyer
Address:                11605 Miracle Hills Dr.  Suite 300
                        PO Box 542005
                        Omaha, NE 68154-4487
Telephone:              (402)-492-9800

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  APRIL 21, 2016        BY THE COURT:   _John M. Friend_
                                              Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Advance Stores Company
        c/o National Registered Agents, RA
        5601 South 59th Street
        LIncoln, NE 68516

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

IN DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| CHE PEAK, | Case No. _____ |
|     Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ADVANCE STORES COMPANY, INCORPORATED, | |
|     Defendant. | |

COMES NOW the Plaintiff, CHE PEAK, by and through his attorneys, and for his cause of action against the Defendant hereby states the following:

### PARTIES-VENUE-JURISDICTION

1.    Plaintiff Che Peak (hereinafter referred to as "Peak") is an African-American male citizen of the United States of America, and at all relevant times alleged herein, was a resident of Omaha, Douglas County, Nebraska.

2.    Defendant Advance Stores Company, Incorporated (hereinafter referred to as "Advance") is a foreign Corporation that is authorized to conduct business in Nebraska and at all times relevant, was doing business under the name of Advance Auto Parts in Omaha, Douglas County, Nebraska.

3.    This Court has original jurisdiction over the claims arising under state law and concurrent jurisdiction over the federal law claims.

4.    Venue is appropriate in this District under Neb. Rev. Stat. §25-403.02. The acts about which Plaintiff complains occurred during the course of his employment in Douglas County, Nebraska.

1

5.      On or about January 10, 2016, Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on Plaintiff's charge, number 32E-2015-00365. A true and correct copy of said Notice of Right to Sue attached as Exhibit "A" and incorporated herein by reference.

<u>FACTUAL BACKGROUND</u>

6.      Peak commenced employment for Advance beginning in June 2009, and was more recently working as a Retail Parts Pro as of May 2013.

7.      In February 2013, Peak was working as a Commercial Parts Pro at Advance's store located at approximately 179th and Maple Street. Peak made verbal and written complaints to his district manager that his store manager, Bob Ferguson, was treating him differently than the Caucasian employees. Specifically, Peak complained that he was being paid less than other Caucasian employees in the same position and that Ferguson disciplined him for things that other Caucasian employee were not disciplined for. Peak's district manager told him that he would discuss it with the HR Department.  As a result, Peak was given an increase in his pay, but no other action was taken by Advance.

8.      Shortly after making his complaints of discrimination, Peak was transferred to another store on 144th and Center. Peak retained the position of Commercial Parts Pro and earned the same hourly wage. Peak was told that he was being moved because Advance was reorganizing its commercial division and he had to move to the new store to keep his job.

9.      In May 2013, Peak was told by Mike Brown that he was going to be moved to Advance's store on 48th and L Street. At this time, Brown demoted Peak to the position of Retail Parts Pro and also decreased his hourly wage.  Peak asked Brown why he was bring moved again, and Brown said that they had a lot of problems with things like theft at the L Street store

2

and that Advance needed Peak's skills there. Peak asked why his pay was being decreased, and Brown told him that the L Street store couldn't afford to pay him the same in the new position and that once he got into the position, he could prove himself and ask the new district manager for a raise.

10.     Shortly after Peak began working at Advance's store on L Street, he found out that the Commercial Part Pro position that he was taken out of was moved back to his former store on 179th and Maple Street.

11.     From May 2013 until the time he was terminated, Peak began making complaints, verbally and in writing, to Advance's management about the discrimination he was being subjected to by his new manager, John Giessel, and co-worker Jim McDonald. Peak complained that Giessel and McDonald treated him and other minority employees less favorably than the Caucasian employees at that store. Specifically, Peak complained that Giessel and McDonald discriminated against him by:

    a.  yelling at Peak and disciplining him for things they didn't yell and discipline Caucasian employees for;

    b.  treating the Caucasian employees more favorably in their schedules and job assignments; and

    c.  paying him less than other similarly-situated Caucasian employees.

12.     While working at the L Street store, Peak also made complaints that Giessel and McDonald treated the Hispanic employees and customers differently compared to Caucasian employees and customers. Peak also complained that he and other employees had witnessed Giessel and McDonald make offensive and unwelcome comments about African-Americans.

13.     Peak dually filed discrimination and retaliation charges against Advance with the

U.S. Equal Opportunity Commission and the Nebraska Equal Opportunity Commission on May 20, 2014 (32E-2014-00528; NEB 1-13/14-5-44923-RD) and August 27, 2014 (32E-2014-00785; NEB1-14/15-8-45277) based on age, race, color, sex, and disability by association.

14.     In October 2014, Peak applied for and received FMLA leave to care for his son. Peak's work schedule was affected as he could not open, close, or work on the weekend because he had to be available to care for his son and take him to doctor appointments. The FMLA restrictions were still on his schedule in February 2015.

15.     In December 2014 and January 2015, Peak discovered that Advanced deducted forty (40) hours of earned sick time from his paycheck without payment of said time.  Peak addressed the issue in a call with Advance's HR Department and was told that his manager would have to correct the error. Peak raised the issue several times, verbally and in writing, with his manager Cody Thielen. Thielen refused to correct the error and gave no explanation for the refusal. As a result, Peak was forced to take unpaid time when he should have been compensated for subsequent sick days.

16.     On January 19, 2015, Peak returned to work after being out sick for several days. Peak was feeling ill, but did not want to call in sick again.  During Peak's shift, he felt progressively worse, and told Thielen that he was feeling ill and needed to leave.  Thielen said that was fine.  Peak volunteered to stay until DJ came in for his shift, and Thielen told Peak to let him know when he was getting ready to leave.

17.     After DJ arrived, and Peak assisted him with some customers, he looked for Thielen. DJ told Peak that Thielen left and had called to tell DJ that he was not coming back to the store even though he was on the schedule until 6:00 pm.

18.     Peak asked DJ to have Thielen call him because he still did not feel well, but

4

Thielen never returned Peak's message. Peak then left at 4:00 p.m. due to illness.

19.     When Peak returned the next day, no one said anything to him about leaving due to illness, including Thielen. Nor was anything said to Peak about it the following week.

20.     On January 20, 2015, Thielen raised his voice at Peak when he asked Thielen for permission to finish a project that he was working on before clocking out for lunch. Thielen asked, "What? You are not going to go to lunch after your boss told you to?" Peak said, "No" and stopped working on the project and proceed towards clocking out for lunch. A customer who came back to purchase a battery stopped Peak before he could clock out, and Thielen just stared at Peak with a menacing look while Peak assisted the customer. After the customer left, Peak asked Thielen why he was looking at him like he was going to do something to him. Thielen responded in a sarcastic tone, "I am sorry you feel that way."

21.     On January 23, 2015, Peak was scheduled to work from 10am to 6pm, but ended up taking additional FMLA leave due to his son having surgery related to his serious health condition.

22.     On February 2, 2015, Peak was working in the store with the two new managers who had recently been assigned to his store, Jess Hanson and Chris Smith.

23.     Thielen was in the store on February 2, 2015 as well, even though he had moved stores the previous week. Peak was told that Thielen wanted to speak to him, and when he went in the back office to do so, Peak saw that there were two police officers with Thielen. Thielen then told Peak he was terminating his employment for leaving early on January 19th. Peak reminded Thielen that he allowed him to go home early because he was ill, and Thielen said there was nothing to discuss and that Peak needed to clock out and go.

24.     As Peak was leaving, he asked Smith if he knew anything about his termination.

Smith said no and that he had been looking forward to working with Peak.

25.     To the best of his knowledge, Peak was not any of his earned vacation time subsequent to his termination.

26.     There were other employees who have left a shift early and they were not disciplined or terminated like Peak.

27.     Plaintiff's performance was satisfactory throughout his employment.

28.     At the time of his termination, Plaintiff was earning approximately $10.84 per hour and working approximately 40 hours per week. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $23,848.00 and are continuing. As part of his compensation, Plaintiff also received health, dental, and vision insurance and 401K retirement contributions in amount that is currently unknown to Plaintiff and will be subject to further discovery.

29.     As a result of Defendant's wrongful conduct, Plaintiff suffered compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## CLAIM I

## RACIALLY-HOSTILE WORK ENVIRONMENT

## (42 U.S.C. § 1981/Title VII)

30.     Plaintiff hereby incorporates paragraphs 1 through 29 as if fully set forth herein and states:

31.     Plaintiff was subject to offensive racial slurs, offensive comments and constant policies and practices encouraging isolation that were sufficiently severe and pervasive as to alter his terms and conditions of employment.

6

32.     The offensive racial slurs and offensive comments were based upon race, color, black or African-American, or non-White status.

33.     The comments were unwelcome.

34.     Defendant was aware of the racial slurs, offensive conduct and policies and practices of isolation because of complaints made by Plaintiff and other employees.

35.     The Defendant failed to take reasonable measures to prevent and promptly remedy the racially hostile environment.

36.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

<u>CLAIM II</u>

<u>DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT</u>

<u>(42 U.S.C. § 1981/Title VII)</u>

37.     Plaintiff hereby incorporates paragraphs 1 through 36 as if fully set forth herein and states:

38.     Defendant discriminated against Plaintiff on the basis of his race and/or color in violation of Title VII and 42 U.S.C. 1981 by subjecting him to disparate treatment in the terms, privileges and conditions of his employment in the following ways:

a.  paying less in wages to Plaintiff than similarly-situated Caucasian employees;

b.  disciplining Plaintiff for conduct that other similarly-situated Caucasian employees were not disciplined for;

c. denying Plaintiff job promotions when he was more qualified than similarly-situated Caucasian employees who were promoted;

d. demoting Plaintiff when his job performance was better than similarly-situated Caucasian employees who were not demoted;

e. terminating Plaintiff for conduct that other similarly-situated Caucasian employees were not terminated for; and,

f. other ways to be proven at trial.

39.     Race and/or color was a motivating factor in Defendant's decisions regarding the terms and conditions of Plaintiff's employment, wages, discipline and termination.

40.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

## CLAIM III

## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

## (42 U.S.C. § 1981/Title VII)

41.     Plaintiff hereby incorporates paragraphs 1 through 40 as if fully set forth herein and states:

42.     Plaintiff engaged in the protected activity of lodging internal complaints with the Defendant concerning the discriminatory treatment he was receiving with regard to the terms and conditions of his employment. Plaintiff also engaged in the protected activity of lodging internal complaints with the Defendant regarding the hostile work environment fostered by the Defendant based upon race and color.

8

43.     Plaintiff engaged in the protected activity of filing two separate charges of discrimination with the EEOC and NEOC alleging that he was being discriminated against because of his race, color, gender and age.  Plaintiff also alleged that Defendant retaliated against him for making his informal complaints of discrimination.

44.     Based on these complaints, the Defendant retaliated against Plaintiff by failing to address the hostile work environment or otherwise remedying the situation, failing to give him raises, demoting him, assigning him undesirable job duties and eventually terminating his employment.

45.     There was a causal connection between Plaintiff's participation in protected activity and the adverse employment action taken against Plaintiff.

46.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

<u>CLAIM IV</u>

**RETALIATION**

42 U.S.C. §12203

47.     Plaintiff hereby incorporates paragraphs 1 through 46 as if fully set forth herein and states:

48.     During his employment, Plaintiff engaged in protected activity, including but not limited to, making complaints of discrimination on the basis of disability by association and exercising his rights under FMLA requesting a reasonable accommodation related to his disability.

9

49.     Defendant took adverse employment action against Plaintiff, including but not limited to, terminating Plaintiff's employment.

50.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against him.

51.     Defendant acted willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff and by doing so is subject to punitive damages.

52.     As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## CLAIM V

### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

#### 29 U.S.C. 2601 et seq.

53.     Plaintiff hereby incorporates paragraphs 1 through 52 as if fully set forth herein and states:

54.     Defendant is and was at all times material an "employer" within the meaning of the Family Medical Leave Act.

55.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

56.     Beginning in at least October 2014, Plaintiff's son suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

57.     Plaintiff was entitled to a leave of absence pursuant to his rights under the Family Medical Leave Act.

10

58.     Plaintiff invoked his right to a leave of absence under the Family Medical Leave Act.

59.     Defendant failed to provide Plaintiff with the protected leave that the Family Medical Leave Act requires and terminated him for missing work while he was on FMLA leave.

60.     Defendant interfered with Plaintiff's right to take leave under the Family Medical Leave Act.

61.     Defendant discriminated against Plaintiff and terminated Plaintiff for exercising his rights under the Family Medical Leave Act.

62.     As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages and other emoluments of employment.

## COUNT VI

### VIOLATION OF NEBRASKA WAGE PAYMENT AND COLLECTION ACT

### Neb. Rev. Stat. § 48-1229 et seq.

63.     Plaintiff hereby incorporates by reference paragraph 1 through 62 and states:

64.     Defendant meets the definition of employer set forth in Neb. Rev. Stat. § 48-1229(1), and as an employer, Defendant is subject to, and is required to abide by, the provisions of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228, et seq. (hereafter "NWPCA").

65.     Plaintiff meets the definition of employee set forth in Neb. Rev. Stat. § 48-1229(2), and as an employee, Plaintiff is entitled to the benefits and protection of the NWPCA.

66.     Plaintiff performed labor and services for Defendant and earned wages in the form of sick, vacation and/or paid time off.

11

67.     Defendant willfully failed to pay Plaintiff his earned wages in violation of the NWPCA and it has been more than thirty (30) days since the regular payday designated by Defendant.

68.     In addition to the wages owed, Plaintiff is entitled to the costs of this suit, plus attorney's fees in an amount not less than 25% of his unpaid wages, pursuant to Neb. Rev. Stat. § 48-1231.

69.     Pursuant to Neb. Rev. Stat. § 48-1232(1), an equal amount of the judgment rendered herein should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State. Because Defendant's nonpayment of wages to Plaintiff was willful, an amount equal to two times the amount of unpaid wages should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State, pursuant to Neb. Rev. Stat. § 48-1232(2).

## DAMAGES

70.     Plaintiff hereby incorporates by reference paragraphs 1 through 69 and states:

71.     As a result of Defendant's wrongful conduct, Plaintiff has suffered damages and seeks the following relief:

    a.   Unpaid wages under the Nebraska Wage Payment and Collection Act;

    b.   Back pay and lost benefits to the time of trial;

    c.   Front pay including retirement and other benefits;

    d.   Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

12

e. Punitive damages for defendants' actual malice or reckless indifference to Plaintiff's federally protected rights;

f. Liquidated damages for FMLA violation as prescribed by 29 U.S.C §2617;

g. Liquidated damages paid to the common school fund under Neb. Rev. Stat. §48-1232

h. Attorney's fees, expert witness fees and other reasonable costs; and,

i. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff Che Peak demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for all his general, special, liquidated and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury, in Douglas County, Nebraska.

Dated this 6th day of April, 2016.

CHE PEAK, Plaintiff

BY: _____
Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
10730 Pacific Street, #111
Omaha, Nebraska 68114
(402) 393-7529
(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorneys for Plaintiff

13

EEOC Form 161 (11/09)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Che K. Peak | From: St. Louis District Office |
| 5523 N 34th St | 1222 Spruce Street |
| Omaha, NE 68111 | Room 8.100 |
| | Saint Louis, MO 63103 |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 32E-2015-00365 | Joseph J. Wilson, State & Local Program Manager | (314) 539-7816 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_James R. Neely, Jr.,_
Director

January 7, 2016
(Date Mailed)

Enclosures(s)

cc:   ADVANCE STORES COMPANY, INC DBA ADVANCE
      AUTO PARTS
      c/o Kenneth M. Wentz
      JACKSON LEWIS
      10050 Regency Cir, Suite 400
      Omaha, NE 68114



Enclosure with EEOC
Form 161 (3/98)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you receive this Notice.** Therefore, you should keep a record of this date. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit
before 7/1/02 -- not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if
you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed
within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice, if you have any questions about your legal rights,
including advice on which U.S. District Court can hear your case. **If you need help in finding a lawyer, you may call
(314) 539-7911 in St. Louis, (913) 551-6609 in Kansas City, or (405) 231-5349 in Oklahoma City.** If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

001306821D01

CE RETURN

Doc. No.   381813

Douglas District Court
1701 Farnam
Omaha                        NE 68183

#6   FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA

MAY 0 2 2016

JOHN M. FRIEND
CLERK DISTRICT COURT

To:
Case ID: CI 16    2875 Che Peak v. Advance Stores Company

y certify that on
es of the Summons

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. | A. Signature |
| ■ Print your name and address on the reverse so that we can return the card to you. | X  ☐ Agent  ☐ Addressee |
| ■ Attach this card to the back of the mailpiece, or on the front if space permits. | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to: | D. Is delivery address different from item 1?  ☐ Yes  If YES, enter delivery address below:  ☐ No |

1. Article Addressed to:
National Registered Agents, Inc. Registered
Agent for Advance Auto Company, Incorporated
5601 South 59th Street
Lincoln NE 68516

9590 9403 0334 5155 5865 30

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☐ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Return Receipt for Merchandise |
| ☐ Collect on Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery Restricted Delivery | ☐ Signature Confirmation Restricted Delivery |
| red Mail | |
| red Mail Restricted Delivery ($500) | |

2. Article Number. (Transfer from service label)
7009 0820 0000 6336 1640

PS Form 3811, April 2015 PSN 7530-02-000-9053

Domestic Return Receipt

(Clerk, or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: Advance Stores Company, Incorporated

At the following address: by and through National Registered Agents, Inc., Registered

Agent, 5601 South 59th Street, Lincoln, NE 68516,

on the  21st  day of April, 2016                              , as required by Nebraska state law.

Che Peak, Plaintiff

Postage $ $7.57          Attorney for:

The return receipt for mailing to the party was signed on April 25, 2016

To: Advance Stores Company
    c/o National Registered Agents, RA
    5601 South 59th Street
    LIncoln, NE 68516

From:  Jennifer L Meyer
       11605 Miracle Hills Dr.  Suite 300
       PO Box 542005
       Omaha, NE 68154-4487

## ATTACH RETURN RECEIPT & RETURN TO COURT